**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| **ONE FOR ISRAEL**, a Texas nonprofit corporation, and **EITAN BAR**, in his individual capacity, and **MORDECHAI VAKNIN**, in his individual capacity, | Case No. _____ |
| Plaintiffs, | Judge _____ |
| v. | |
| **YARON REUVEN**, in his individual capacity, | |
| Defendant. | |

**COMPLAINT**

**Demand for Jury Trial: Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand trial by jury on all issues so triable.**

**COME NOW** Plaintiffs, One For Israel (the "Ministry"), Eitan Bar ("Eitan"), and Mordechai Vaknin ("Moti") (sometimes collectively referred to herein as "Plaintiffs"), by and through undersigned counsel, and for their Complaint against Defendant Yaron Reuven ("Reuven") state as follows:

**NATURE OF THE ACTION**

1. This is a libel action arising out of a YouTube video created and published by Reuven (the "Video"). The Video falsely accuses Eitan and Moti—two missionaries working on behalf of the Ministry—of trying to physically assault, batter, and attack a Jewish Rabbi named Daniel Asor ("Rabbi Asor") at a coffeeshop in 2014 (the "Coffeeshop Meeting" or "Meeting").

2. The truth of the matter is that Eitan and Moti never committed any such acts. They never committed nor attempted to commit any violence whatsoever against Rabbi Asor. In fact, Rabbi Asor himself later called Reuven's Video "a false story."

3. The background motivation for Reuven's false and defamatory lies about Plaintiffs is a religious conflict between: (a) Jews who believe in Orthodox Judaism and the Torah ("Orthodox Judaism") and (b) Jews who identify with the Christian Jesus and the New Testament ("Messianic Judaism"). Reuven is a leader of the former group: an Orthodox Jewish Rabbi that actively opposes Plaintiffs' efforts to spread Messianic Judaism throughout the world. Reuven intended his false and defamatory allegations to slow Plaintiffs' evangelistic efforts by discrediting and destroying the reputation of the Ministry and two of its most prominent missionaries. Such motive and intent evidences Reuven's malice—constitutionally and at common law—in publishing his false and defamatory Video.

4. Although this conflict originated in religious controversy, this case may be decided on neutral principles of secular law. This case does not require adjudication of questions relating to religious doctrine. Ultimately, this case is about Reuven's provably false report that Plaintiffs physically attacked and tried to "beat up" Rabbi Asor at the Coffeeshop Meeting.

5. Reuven's Video contains defamatory *per se* statements that Reuven published negligently, with a reckless disregard of the truth, and with actual knowledge of falsity. The Video caused Plaintiffs to suffer severe emotional and reputational injury.

**PARTIES, JURISDICTION, AND VENUE**

**A.   ONE FOR ISRAEL (the "Ministry")**

6. The Ministry is an initiative of native-born Israelis to bless Israel with Yeshua. "Yeshua" is the Hebrew name for Jesus. This initiative is otherwise known as Messianic Judaism.

7. The Ministry was established in 1990 and first began as a Bible College in Israel.

8. Over the years, the Ministry has expanded to a multi-faceted ministry with the express goal of evangelizing Israelis and promoting Messianic Judaism.

9. The Ministry is on the forefront of high-tech evangelism and uses innovative methods and technologies to spread Messianic Judaism throughout the world. One of the reasons the Ministry specializes in online and digital evangelism and outreach is because many Orthodox Jewish Israelis fear the discovery by their friends or family that they read the Bible or any other Christian material in support of Messianic Judaism.

10. The Ministry is actively opposed by numerous organizations, including a well-funded organization operated by Orthodox Jews that rejects and opposes Messianic Judaism in Israel.

**B.     EITAN & MOTI**

11. Eitan and Moti are missionaries working on behalf of the Ministry.

12. Eitan and Moti work with youth, soldiers, and students, teaching the New Testament and sharing the Gospel of Jesus Christ. Eitan and Moti are passionate about reaching their fellow Israelis, especially youth and young adults.

13. Eitan is the Director of Media Outreach for the Ministry.

14. Eitan has authored several popular books about Messianic Judaism.

15. Eitan regularly gives speeches and presentations to individuals wanting to learn more about Messianic Judaism.

16. Throughout their careers and prior to Reuven's false accusations, Eitan and Moti have maintained strong and positive reputations in the Messianic community and the Jewish community at large.

**C.     REUVEN**

17. Reuven is an Orthodox Jewish Rabbi and a member of the Rabbinical Alliance of America, which is a national organization focusing on promoting Orthodox Judaism and serving its leaders, religious teachers, chaplains, and other individuals.

18. Reuven is anti-missionary and actively opposes Messianic Judaism and the Plaintiffs' mission in Israel and around the world. Reuven views the Ministry as a heretical organization and views Eitan and Moti as heretics.

19. Reuven maintains a website, www.beezrathashem.org (sometimes referred to herein as the "Website"), that indicates he is a "well known self made [sic] Wall Street multimillionaire by the age of 23" who thereafter became a full-time Rabbi.[1]

20. Reuven maintains a mobile application by the same name, "Beezrat Hashem" (sometimes referred to herein as the "App").

21. Reuven maintains his own YouTube Channel entitled "Rabbi Yaron Reuven" (the "YouTube Channel" or "Channel"). Reuven's Channel has approximately 21,400 subscribers and can be accessed by the Court at https://www.youtube.com/user/ReuvenCapital (last visited July 8, 2021).

22. Reuven is a natural person and not a media defendant.

**D.   JURISDICTION AND VENUE**

23. The Ministry is a citizen of the State of Texas. The Ministry is a nonprofit corporation formed under the laws of the State of Texas and has its principal place of business at 1300 Glade Road, Colleyville, Texas 76034. Therefore, the Ministry is a corporation and citizen of Texas pursuant to 28 U.S.C. § 1332(c)(1).

24. Moti is a citizen of the foreign state of Israel. Thus, Moti is a citizen of a foreign state within the meaning of 28 U.S.C. § 1332(a)(2) and (a)(3). Moti is an "additional part[y]"

---

[1] BeEzratHaShem.org, *About Us*, https://www.beezrathashem.org/our-rabbis (last visited July 7, 2021); *see also* LinkedIn, *Rabbi Yaron Reuven*, https://www.linkedin.com/in/yaronreuven (last visited July 7, 2021).

within the meaning of 28 U.S.C. § 1332(a)(3) because a co-Plaintiff, the Ministry, is a citizen of the State of Texas.

25. Eitan is a citizen of the foreign state of Israel. Thus, Eitan is a citizen of a foreign state within the meaning of 28 U.S.C. § 1332(a)(2) and (a)(3). Eitan is an "additional part[y]" within the meaning of 28 U.S.C. § 1332(a)(3) because a co-Plaintiff, the Ministry, is a citizen of the State of Texas.

26. Reuven is a citizen of the State of Florida, residing in Broward County at 3573 Southwest 49th Place, Fort Lauderdale, Florida 33312.

27. There exists complete diversity of citizenship between the Plaintiffs and Reuven.

28. The amount in controversy greatly exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests, costs, and attorneys' fees. Reuven's false accusations, as alleged below, are defamatory *per se.* By creating and perpetuating scathing lies about Plaintiffs, Reuven caused Plaintiffs to suffer demonstrable hatred and scorn in an amount that a jury will find, through their assessment of compensatory and punitive damages, greatly exceeds the jurisdictional minimum threshold of this Court.

29. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

30. This Court has personal jurisdiction over Reuven because he is a citizen of the State of Florida and resides in this District.

31. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Reuven resides in this District, is subject to personal jurisdiction in this District, and/or a substantial part of the events giving rise to this claim occurred in this District, including but not limited to publication and injury.

## DETAILED FACTUAL BACKGROUND

**E.     THE COFFEESHOP MEETING**

32.     In the summer of 2014, a young man named Meir Rosh ("Meir") asked Eitan and Moti to meet him at a coffeeshop in Netanya, Israel. Eitan and Moti agreed, and they attended the Meeting.

33.     Meir also asked Rabbi Asor and Rabbi Asor's representative, Benjamin Kluger ("Kluger"), to attend the Meeting. Rabbi Asor and Kluger agreed, and they attended the Meeting.

34.     At the time of the Meeting, Rabbi Asor was an Orthodox Jewish Rabbi.

35.     The catalyst for the Meeting was one of religious inquiry: Meir wanted to meet with the various religious leaders to help him learn whether he identifies with or adheres to the Orthodox beliefs of Rabbi Asor or the Messianic beliefs of Plaintiffs.

36.     The Meeting lasted approximately two hours; third-party coffeeshop diners and staff were present at all times during the Meeting.

37.     The police were never called to the Meeting, and no police reports were created as a result of the Meeting.

38.     Rabbi Asor did most of the talking during the Meeting.

39.     No violence occurred between any of the parties before, during, or after the Meeting.

40.     Neither Eitan nor Moti attempted to hit or make violent physical contact with Rabbi Asor, Kluger, or Meir before, during, or after the Meeting.

41.     Neither Eitan nor Moti touched or made violent physical contact with Rabbi Asor, Kluger, or Meir before, during, or after the Meeting.

42.     The Meeting consisted entirely of civil and cordial conversation about Orthodox Judaism and Messianic Judaism.

43. After the Meeting, everyone left the coffeeshop peacefully.

44. At all times before, during, and after the Meeting, Eitan and Moti acted respectfully toward Meir, Rabbi Asor, and Kluger.

45. Eitan and Moti have not met with or seen Rabbi Asor since the Meeting.

46. After the Meeting, Meir was baptized and joined a Messianic congregation of Jews.

47. Reuven did not attend and was not otherwise a witness to the Coffeeshop Meeting.

### F. REUVEN'S FALSE AND DEFAMATORY VIDEO

48. Reuven published the Video to his personal YouTube Channel on February 28, 2021. Reuven also published the Video to the Website and App on February 28, 2021. Reuven also published the Video to Facebook and other social media platforms.

49. Reuven's Video is titled, "What Happened When Missionaries ONE FOR ISRAEL Met Rabbi Daniel Asor [sic]?  (A BeEzrat HaShem Film)."

50. Reuven's Video is still available online and can be accessed by the Court at https://www.youtube.com/watch?v=kN9unLz2OKs (last visited July 7, 2021). The Video is hereby incorporated by reference into this Complaint.

51. The Video is approximately 7 minutes and 48 seconds long and has been viewed on YouTube over 7,500 times.

52. At approximately 2 minutes and 37 seconds into the Video, Reuven begins to tell a false story of the Coffeeshop Meeting. Reuven states:

> …. [Rabbi Asor] met with the top two most dangerous missionaries in Israel probably in the world today. There's [sic] two clowns from One For Israel. Eitan and Moti. He met them at a café. Neutral place to have a debate. But not like they always want to make a stage out of it and so on. But sophisticated debate among peers, if you will. [Rabbi Asor] is trying to get [Eitan and Moti] to leave and abandon their heresy, and surely [Eitan and Moti] are trying to get [Rabbi Asor] to join them. But needless to say, this is supposed to be cordial, nice, civilized and so on. After [Rabbi Asor] destroys both

of them in the café, beats them in the canyon [sic] and debate, proves everything that they're saying wrong, they both get up and try to beat him up. They both get up and try to beat him up! He was already prepared ahead of time. He was in the air force. He was a smart guy. He already knew this was going to happen ahead of time. He knows Christians like the back of his hands. He already prepared. A few people came in and then broke it up. But they tried to beat him up! They tried to break his bones! Why? In the missionary mentality, this is a necessary evil….

The above statement from Reuven's Video will sometimes be referred to herein as "Reuven's Lie" or simply the "Lie."

53. Reuven's Lie is completely false. Reuven's Lie is not even remotely close to the truth. Eitan and Moti never, at any point, "tr[ied] to beat up" Rabbi Asor at the Coffeeshop Meeting. Eitan and Moti never "tried to break [Rabbi Asor's] bones." Eitan and Moti took no physical action against Rabbi Asor whatsoever.

54. Reuven manufactured his Lie out of whole cloth.

55. While orating his Lie, at approximately 3 minutes and 2 seconds into the Video, Reuven published the Ministry's logo as illustrated in the below screenshot from the Video:



56. While orating his Lie, Reuven published edited videos of Eitan and Moti, showing their faces as illustrated in the below screenshots from the Video:

*Eitan*



*Moti*



### G. REUVEN'S FALSE AND DEFAMATORY VIDEO CONVEYED STATEMENTS OF FACT THAT ARE CAPABLE OF A DEFAMATORY MEANING AND ARE DEFAMATORY *PER SE*

57. Reuven's Video conveyed actionable statements of fact. Reuven's Video accuses Eitan and Moti of committing violent and physical conduct—he accuses them of trying to "beat up" Rabbi Asor. This is an accusation of assault and battery that can be proven either true or false by a jury. This is not a statement of opinion or rhetorical hyperbole. Reuven intended his Lie to be construed and accepted as a statement of fact. Indeed, he titled the Video, "What Happened When Missionaries ONE FOR ISRAEL Met Rabbi Daniel Asor [sic]?...."

58. Reuven's Video conveys a false and defamatory meaning about the Plaintiffs. The statements claim that Eitan and Moti committed assault and battery and tried to cause bodily injury and physical harm to a religious leader. Reuven's Video implies that Eitan and Moti physically attacked another religious leader because the leader disagreed with their religious beliefs.

59. Reuven's Video is defamatory *per se* because it tends to injure Plaintiffs in their trade or profession of Messianic evangelism and because it tends to subject them to hatred, distrust, ridicule, contempt, and disgrace. *Blake v. Ann-Marie Giustibelli, P.A.*, 182 So. 3d 881, 884 (Fla. Dist. Ct. App. 2016). Moreover, Reuven's Video is defamatory *per se* because it imputes that Plaintiffs committed a crime. *Kirvin v. Clark*, 396 So. 2d 1203, 1204 (Fla. Dist. Ct. App. 1981) (finding that speaker's allegation that plaintiff threatened to do bodily harm or injury to the speaker was defamatory *per se* because it imputed a crime).

### H. REUVEN PUBLISHED NEGLIGENTLY, WITH A RECKLESS DISREGARD OF THE TRUTH, AND WITH ACTUAL KNOWLEDGE OF FALSITY

60. Reuven published his Video negligently, with a reckless disregard of the truth, and with actual knowledge of falsity.

61. Reuven asserts in his Video that his purported source for the story was Rabbi Asor himself.

62. However, on or about March 3, 2021, Eitan contacted Rabbi Asor via email to ask him whether he told Reuven the Lie about the Coffeeshop Meeting. A true and correct copy of the email thread between Eitan and Rabbi Asor, translated from Hebrew to English, is attached and incorporated by reference as ***Exhibit A***.

63. Rabbi Asor told Eitan that Reuven's Lie is "[n]ot true!" and "[t]ruly a false story."

64. Rabbi Asor's admission that Reuven's Lie is false provides evidence that Reuven failed to conduct a reasonable investigation into his false accusations and, worse, that he actually knew that his Lie was false but published it anyway.

65. It is well-accepted that a publisher's actual malice and state of mind may be proven through circumstantial evidence, such as evidence of the publisher's motive. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989), *cited in Don King Prods. v. Walt Disney Co.*, 40 So. 3d 40, 44 (Fla. Dist. Ct. App. 2010); *see also Perk v. Reader's Digest Ass'n*, 931 F.2d 408, 411 (6th Cir. 1991) (stating that a plaintiff "can present proof of malice in the form of cumulative circumstantial evidence, which is often the only way to prove malice in libel cases.").

66. Here, Reuven's motive is apparent on the face of the Video. Reuven sought to denigrate and attack missionaries whom he believes to be heretics. Reuven maliciously intended that his Lie be used by his followers as a reason to avoid Plaintiffs and eschew their religious beliefs. Reuven intended his false and defamatory allegations to slow Plaintiffs' evangelistic efforts by discrediting and destroying the reputation of the Ministry and two of its most prominent missionaries.

67. Reuven published the Video with ill will, evil motive, and actual malice. Reuven published the Video with a high degree of awareness of its probable falsity. Reuven entertained serious doubts as to the truth of his Video. Reuven intended the Video to harm the Plaintiffs' reputation.

68. Reuven's actual malice is further evidenced by his failure and refusal to retract the Video despite Plaintiffs' good faith attempts to resolve this matter without the involvement of the Court by sending two demands for retraction to Reuven, as alleged below.

**I.   PLAINTIFFS' TWO DEMANDS FOR RETRACTION HAVE BEEN UNSUCCESSFUL**

69. On or about March 3, 2021, Plaintiffs sent Reuven a demand letter via email (the "First Demand"). A true and correct copy of the First Demand is attached as ***Exhibit B*** and is hereby incorporated by reference.

70. The First Demand politely asked Reuven to remove the Video from his YouTube Channel. Reuven never responded to the First Demand.

71. On or about March 9, 2021, Plaintiffs sent Reuven another demand via written letter (the "Second Demand"). A true and correct copy of the Second Demand is attached as ***Exhibit C*** and is hereby incorporated by reference.

72. The Second Demand again asked Reuven to remove the Video from his YouTube Channel. Reuven never responded to the Second Demand.

**CAUSES OF ACTION**

**Count 1—Defamation**

73. Plaintiffs restate and incorporate by reference the above paragraphs as if fully realleged herein.

74. Reuven's Video is demonstrably false for the reasons previously alleged.

75. Reuven's Video is of and concerning the Ministry because:

    a. the Video prominently publishes, during the relevant portion of the Video, the Ministry's logo; and

    b. Reuven identifies the Ministry by name and states that Eitan and Moti are missionaries working on behalf of the Ministry.

76. Reuven's Video is of and concerning Eitan and Moti because:

    a. the Video identifies Eitan and Moti by name; and

    b. the Video prominently publishes Eitan and Moti's faces during the relevant portion of the Video.

77. Reuven's Video imputes specific charges of conduct to Plaintiffs, including that Eitan and Moti tried to "beat up" Rabbi Asor at the Coffeeshop Meeting.

78. Reuven's Video is capable of a defamatory meaning because, when read and viewed by a reasonable reader in context, the specific charges of conduct tend to, in no particular order:

    a. subject Plaintiffs to hatred, ridicule, and contempt;

    b. diminish Plaintiffs' standing in the community; and

    c. denigrate Plaintiffs' fitness to be evangelists working on behalf of the Ministry.

79. Reuven's Video is defamatory *per se* for the reasons previously alleged.

80. Reuven's Video contained statements of fact that can be proven either true or false, and Reuven intended to convey his accusations about Plaintiffs as statements of fact. Reuven did not publish his false accusations as mere parody or opinion.

81. Reuven published his false accusations negligently, with common law malice, and with actual malice, as previously alleged.

82. Reuven's Video was not privileged.

83. Plaintiffs have suffered significant reputational harm and other damages as a result of Reuven's Video, and Plaintiffs will continue to suffer perpetual reputational harm.

84. Reuven's Video has caused increased threats of potential violence against Eitan, Mot, and other employees of the Ministry in Israel.

85. As a proximate result of Reuven's Video, Eitan and Moti suffered severe emotional distress and personal physical injury.

**WHEREFORE**, Plaintiffs respectfully pray:

(a) That judgment be entered against Reuven for substantial compensatory damages in an amount to be determined at trial;

(b) That Reuven be held liable for the reputational harm he has caused Plaintiffs;

(c) That judgment be entered against Reuven for punitive damages in an amount to be determined at trial;

(d) That Plaintiffs recover pre- and post-judgment interest;

(e) That Plaintiffs recover their reasonable attorneys' fees and expenses from Reuven;

(f) For trial by jury on all issues so triable;

(g) That all costs of this action be taxed to Reuven; and

(h) That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

*[Signature Page Follows]*

Respectfully submitted this 21st day of July, 2021:

| | |
|---|---|
| **HEMMER DEFRANK WESSELS, PLLC** | **LEWIS, LONGMAN & WALKER, P.A.** |
| */s/ Todd V. McMurtry*_____ | */s/ Richard P. Green*_____ |
| Todd V. McMurtry | Richard P. Green |
| (*pro hac vice motion forthcoming*) | (Florida Bar No. 0119530) |
| J. Will Huber | 100 Second Avenue South, Suite 501-S |
| (*pro hac vice motion forthcoming*) | St. Petersburg, Florida 33701 |
| 250 Grandview Drive, Suite 500 | Phone: (727) 245-0820 |
| Fort Mitchell, Kentucky 41017 | Fax: (727) 290-4057 |
| Phone: (859) 344-1188 | rgreen@llw-law.com |
| Fax: (859) 578-3869 | jbissette@llw-law.com |
| tmcmurtry@hemmerlaw.com | |
| whuber@hemmerlaw.com | |
| | *Trial Attorneys for Plaintiffs* |