# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

|  |  |
|---|---|
| **ONE FOR ISRAEL, a Texas nonprofit corporation, and EITAN BAR, in his individual capacity, and MORDECHAI VAKNIN, in his individual capacity,** | **Case No. 0:21-cv-61475-AHS** |
|  |  |
| **Plaintiffs,** | **Judge Raag Singhal** |
| **v.** |  |
|  |  |
| **YARON REUVEN, in his individual capacity,** |  |
|  |  |
| **Defendant.** |  |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Richard P. Green (0119530)
Lewis, Longman & Walker, P.A.
100 Second Avenue South
Suite 501-S
St. Petersburg, Florida 33701
Phone: (727) 245-0820
Fax: (727) 290-4057
rgreen@llw-law.com

Todd V. McMurtry (admitted *pro hac vice*)
J. Will Huber (admitted *pro hac vice*)
Hemmer DeFrank Wessels, PLLC
250 Grandview Drive
Suite 500
Fort Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
whuber@hemmerlaw.com

*Trial Attorneys for Plaintiffs,*
*One For Israel, Eitan Bar, and*
*Mordechai Vaknin*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF FACTS ............................................................................................... 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT .................................................................................................................... 5

   A.  The Ecclesiastical Abstention Doctrine Does Not Apply ....................................... 6

   B.  Defendant's False Statement Is Not Protected By Privilege ................................. 8

   C.  The Amended Complaint Adequately Alleges Intent, Including Actual Malice ... 11

      1.  Defendant Did Not Act in Good Faith ............................................................ 11

      2.  Actual Malice Is Alleged ................................................................................ 12

      3.  Common Law Malice Is Alleged .................................................................... 13

      4.  Negligence Is Alleged .................................................................................... 15

CONCLUSION ............................................................................................................... 15

CERTIFICATE OF SERVICE ....................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Asinmaz v. Semrau*,
    42 So. 3d 955 (Fla. Dist. Ct. App. 2010) ................................................................15

*Baird v. Mason Classical Acad., Inc.*,
    317 So. 3d 264 (Fla. Dist. Ct. App. 2021) ...........................................................2

*Bilbrey v. Myers*,
    91 So. 3d 887 (Fla. Dist. Ct. App. 2012) ...............................................................8

*Blake v. Ann-Marie Giustibelli, P.A.*,
    182 So. 3d 881 (Fla. Dist. Ct. App. 2016) ..........................................................13

*Crowder v. S. Baptist Convention*,
    828 F.2d 718 (11th Cir. 1987) ................................................................................6

*Curtis Pub. Co. v. Butts*,
    388 U.S. 130 (1967) ...............................................................................................12

*Della-Donna v. Gore Newspapers Co.*,
    489 So. 2d 72 (Fla. Dist. Ct. App. 1986) .............................................................15

*Delmonico v. Traynor*,
    116 So. 3d 1205 (Fla. 2013) ..................................................................................14

*Diocese of Palm Beach, Inc. v. Gallagher*,
    249 So. 3d 657 (Fla. Dist. Ct. App. 2018) .............................................................7

*Falic v. Legg Mason Wood Walker, Inc.*,
    347 F. Supp. 2d 1260 (S.D. Fla. 2004) ..................................................................9

*Flynn v. Estevez*,
    221 So. 3d 1241 (Fla. Dist. Ct. App. 2017) ...........................................................8

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ...............................................................................................12

*Griffith v. Wainwright*,
    772 F.2d 822 (11th Cir. 1985) ................................................................................4

*Gundel v. AV Homes, Inc.*,
    264 So. 3d 304 (Fla. Dist. Ct. App. 2019) .............................................................2

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989).........................................................................................12

*Johnson v. Unique Vacations, Inc.*,
    498 Fed. App'x 892 (11th Cir. 2012) .....................................................4

*Jones v. Auto. Ins. Co.*,
    917 F.2d 1528 (11th Cir. 1990) ..............................................................3

*Kirvin v. Clark*,
    396 So. 2d 1203 (Fla. Dist. Ct. App. 1981) .........................................14

*Lewis v. Evans*,
    406 So. 2d 489 (Fla. Dist. Ct. App. 1981) ...........................................10

*Lundquist v. Alewine*,
    397 So. 2d 1148 (Fla. Dist. Ct. App. 1981) .........................................14

*Malicki v. Doe*,
    814 So. 2d 347 (Fla. 2002).................................................................7, 8

*Miami Herald Publishing Co. v. Ane*,
    458 So. 2d 239 (Fla. 1984)..................................................................15

*Myhre v. Seventh-Day Adventist Church Reform Movement*,
    719 Fed. App'x 926 (11th Cir. 2018) .....................................................7

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964).............................................................................12

*Nodar v. Galbreath*,
    462 So. 2d 803 (Fla. 1984)...............................................................9, 10

*Perk v. Reader's Digest Association*,
    931 F.2d 408 (6th Cir. 1991) ...............................................................12

*Pomfret v. Atkinson*,
    137 So. 3d 1161 (Fla. Dist. Ct. App. 2014) .........................................14

*Powell v. Lennon*,
    914 F.2d 1459 (11th Cir. 1990) .........................................................3, 4

*Richard v. Gray*,
    62 So. 2d 597 (Fla. 1953).......................................................................5

iii

*Shafran v. Parrish*,
     787 So. 2d 177 (Fla. Dist. Ct. App. 2001) ..........................................................5, 9

*Springhill Missionary Baptist Church, Inc. v. Mobley*,
     251 So. 3d 281 (Fla. Dist. Ct. App. 2018) .............................................................6

*State v. Young*,
     974 So. 2d 601 (Fla. Dist. Ct. App. 2008) .............................................................6

*St. Brendan High School, Inc. v. Neff*,
     283 So. 3d 399 (Fla. Dist. Ct. App. 2019) .............................................................7

*Thomas v. Tampa Bay Downs, Inc.*,
     761 So. 2d 401 (Fla. Dist. Ct. App. 2000) ...........................................................10

*Wolston v. Reader's Digest Ass'n*,
     443 U.S. 157 (1979)...............................................................................................12

**Statutes**                                                                    **Page(s)**

Fla. Stat. § 768.295 ......................................................................................2, 15

**Other Authorities**                                                            **Page(s)**

Fed. R. Civ. P. 12 .................................................................................3, 4, 9, 11

Fed. R. Civ. P. 56 ...............................................................................................4

## STATEMENT OF FACTS

At the invitation of a young Jewish acolyte, Plaintiffs Eitan Bar ("Eitan") and Mordechai Vaknin ("Moti") met with Rabbi Daniel Asor in a coffee shop in Israel in 2014. (First Amended Complaint ("FAC") ¶¶ 1, 39–40, 42). Their purpose in meeting was to discuss a religious issue: namely, the divinity of Jesus. (*Id.* ¶ 42). Eitan and Moti are participants in the "Messianic Judaism" movement, which believes in the divinity of Jesus. (*Id.* ¶¶ 6, 8–9, 11–16). As an Orthodox adherent, Rabbi Asor does not. (*Id.* ¶¶ 10, 41). As reported by all persons present, the meeting in the coffee shop was cordial and peaceful from beginning to end. (*Id.* ¶¶ 43–54).

Defendant Reuven is an Orthodox Jew who maintains a website, mobile app, and YouTube channel, all of which he uses to actively oppose Messianic Judaism, which he believes to be heretical. (*Id.* ¶¶ 17–22). On his YouTube channel on February 28, 2021, Reuven published a video in which he accused Eitan and Moti of violence against Rabbi Asor at the coffee shop meeting: "[Eitan and Moti] both get up and try to beat him up. They both get up and try to beat him up!" Reuven added, "[a] few people came in and then broke it up. But they tried to beat him up! They tried to break his bones!" (*Id.* ¶¶ 55–60). During his video presentation, Reuven referred to both Eitan and Moti by name, showed images of their faces, and published the ministry logo of "One For Israel," Eitan and Moti's ministry and a Plaintiff in this suit. (*Id.* ¶¶ 62–63, 83). Reuven also posted his video on his other social media outlets. (*Id.* ¶ 55).

As alleged in the First Amended Complaint, none of what Reuven claimed to be true actually happened. The true facts alleged in the First Amended Complaint are supported by direct, unequivocal evidence. All witnesses to the meeting deny any physical confrontation. (*Id.* ¶¶ 46–51, 60, FAC Ex. C). Both Eitan and Moti deny committing any physical violence or engaging in any physical interaction at the coffee shop meeting at all.

1

(*Id.* ¶¶ 46–51, 60). Even Orthodox Rabbi Asor, the supposed victim of Eitan and Moti's physical attack, described Reuven's video representations as a fabrication. "Not true!," he stated. (*Id.* ¶ 70, FAC Ex. C). "Truly a false story." (*Id.*). Plaintiffs twice requested that Reuven retract his false statements. (*Id.* ¶¶ 76–79; Defendant's Memo. at 2 ("Plaintiffs then sent two demands for Defendant to take his video down.")). Both requests went unanswered. (*Id.* ¶¶ 77, 79). Consequently, Plaintiffs filed this suit for defamation.

Service of process has been most difficult. (*Id.* ¶ 35, FAC Ex. A). Reuven has actively concealed his whereabouts to evade service of process. (*Id.*). He has refused entry to the process server. (*Id.*). His reluctance to accept process provides circumstantial evidence of his complicity.

In his Memorandum in Support of his Motion to Dismiss,[1] the Defendant makes mention of Florida's "Anti-SLAPP" statute. (Defendant's Memo. at 8). Defendant's bare mention of this statute does not comport with the procedures required by the statute. The Defendant bears the initial burden of proof. *Baird v. Mason Classical Acad., Inc.*, 317 So. 3d 264, 268 (Fla. Dist. Ct. App. 2021) (citing *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. Dist. Ct. App. 2019)). Florida's statute requires that the Defendant's motion be accompanied by affidavits or other evidence substantiating Defendant's claim that the First Amended Complaint is "without merit." Fla. Stat. § 768.295(4). Defendant did not bring an "Anti-SLAPP" motion because every fact pled in the First Amended Complaint is fully substantiated by eyewitness accounts and by video evidence that remains posted on publicly accessible websites and social media. To claim that the Plaintiffs' well-pled and carefully investigated First Amended Complaint is "meritless" is patently frivolous.

---

[1] The Defendant's Motion to Dismiss is sometimes referred to herein as his "Motion," and Defendant's Memorandum in Support of his Motion to Dismiss is sometimes referred to herein as "Defendant's Memo."

## LEGAL STANDARD

The Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). A motion to dismiss will be denied unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). The allegations in the complaint must be taken as true for purposes of the motion to dismiss. *Id.* Under Fed. R. Civ. P. 12(d), a motion to dismiss converts to a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d); *Jones v. Auto. Ins. Co.*, 917 F.2d 1528, 1531–32 (11th Cir. 1990). This Court has discretion to exclude Defendant's added matters or to convert Defendant's motion to dismiss into one for summary judgment. *See, e.g., Jones*, 917 F.2d at 1531–32.

The Defendant has based his defenses on his "good faith," arising specifically from the supposed conversation between the Defendant and "his rabbi," who himself had allegedly spoken with Asor. (Defendant's Memo. at 5). The Defendant does not name this rabbi, nor is the date nor means of this alleged communication described. This supposed communication between the Defendant and the unnamed rabbi is not mentioned in the First Amended Complaint. Thus, it constitutes a "matter outside the pleadings." Similarly, the Defendant's Motion makes various assertions about statements supposedly made by Rabbi Asor to the Defendant. (Defendant's Memo. at 2–3). These statements are not alleged in the First Amended Complaint. Thus, they too constitute "matters outside the pleadings" and are asserted by Defendant to refute the allegations in the First Amended Complaint.[2]

---

[2] Stated another way, Defendant has not argued the insufficiency of the allegations to inform him of the matters for which he has been sued but rather challenges the truth of the allegations. Accordingly, should the Court, in its discretion, consider Defendant's argument, then this matter must proceed under Fed. R. Civ. P. 56, and Plaintiffs must be afforded notice of the conversion and adequate time for discovery.

For the Court to dismiss Plaintiffs' First Amended Complaint, based at least in part on the defense of "good faith," would require the Court to judge the Defendant's claim as true and the allegations in the First Amended Complaint as false which necessarily falls outside the standard for a motion to dismiss. *See Powell*, 914 F.2d at 1463.

Fed. R. Civ. P. 56 governs motions for summary judgment and requires the movant to support his motion by showing that "there is not genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In support of that motion, the movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (…), admissions, interrogatory answers, or other materials." (*Id.*). Clearly, none of the required supporting materials have been presented to support the Defendant's bare assertions. This Court should exercise its discretion under Fed. R. Civ. P. 12(d) to exclude all references to "matters outside the pleadings," specifically, all unsupported assertions about this mystery rabbi. The Defendant's entire claim of "good faith" rests on this alleged communication with the unnamed rabbi. Should this Court exclude this "matter outside the pleadings," then no legal grounds supporting the Defendant's Motion remain. As an alternative to dismissal, if the Court converts Defendant's motion to dismiss into a motion for summary judgment, the Plaintiffs will require notice and adequate time for discovery prior to this Court's ruling. *Johnson v. Unique Vacations, Inc.*, 498 Fed. App'x 892, 894 (11th Cir. 2012) (quoting *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) ("[When conversion occurs, the adverse party must be] given express, ten-day notice of the summary judgment rules, of his right to file affidavits or other material in opposition to the motion, and of the consequences of default.")).

## ARGUMENT

Despite the Defendant's repeated assertions, this case has nothing to do with religious doctrine. This Court is not being asked to assess any person's faith nor to interpret or explicate any religious text. This case is purely about objective reality: what happened, physically and visibly, during a meeting at a coffee shop in Israel in 2014. Neither the purpose of the meeting nor the words spoken matter. What matters is this: the Defendant Yaron Reuven stated that Eitan and Moti physically attacked and assaulted Rabbi Daniel Asor at that meeting. They did not. Rabbi Asor has confirmed they did not. Reuven invented this fabrication. When Reuven publicized this fabrication on his YouTube channel, he committed the tort of libel. He falsely and publicly accused the Plaintiffs of committing a criminally and civilly punishable act. Reuven's statement constitutes defamation *per se* under Florida law. *See, e.g., Shafran v. Parrish*, 787 So. 2d 177, 179 (Fla. Dist. Ct. App. 2001) ("When a statement charges a person with committing a crime, the statement is considered defamatory *per se*.") (citing *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)).

The Defendant argues that the topic of the discussion in the coffee shop matters, and that, because that topic involves fundamental religious questions concerning the divinity of Jesus, that therefore this case requires the Court to litigate this religious issue. This suit does not require this court to rule on the divine status of Jesus. It does not ask this Court to interpret rabbinical law, to review any tractate of the Talmud, nor to engage in Biblical exegesis. The point of discussion in the coffee shop is irrelevant; it could have been religion, politics, baseball, or any matter at all. If the disagreement had been over who was the better player, Williams or DiMaggio, a suit involving conduct at the meeting would not behoove this Court to interpret baseball statistics. Nor more so religion. The issue

presented is the false claim, wholly invented, that Eitan and Moti physically assaulted Rabbi Asor at the coffee shop meeting.

The Defendant styles his argument about religion in several ways. He states that his statements are part of the Jewish rabbinical tradition of repeating stories, even if based on conjecture (Defendant's Memo. at 1, 5, 7); he claims that his statements about others are protected by a qualified privilege (*id.* at 4–5); he argues that the ecclesiastical abstention doctrine precludes this court from adjudicating this dispute entirely (*id.* at 8–9). None of these claims of religious exemption apply. The Defendant's statements at issue describe a physical assault, not a theological position. The Defendant's statements are patently factual, motivated by ill-will, informed by constitutional malice, and were subject to ample publicity on the web. They satisfy all of the elements of defamation under Florida law.

## A.      The Ecclesiastical Abstention Doctrine Does Not Apply

The ecclesiastical abstention doctrine prohibits civil courts from "interfering with internal church disputes." *State v. Young*, 974 So. 2d 601, 612–13 (Fla. Dist. Ct. App. 2008). The doctrine prevents courts from reviewing disputes concerning theological controversy, church discipline, ecclesiastical government, or the conformity of church members to religious morality. *Crowder v. S. Baptist Convention*, 828 F.2d 718, 721 (11th Cir. 1987); *Springhill Missionary Baptist Church, Inc. v. Mobley*, 251 So. 3d 281, 238 (Fla. Dist. Ct. App. 2018). Not all church disputes, however, are covered by the doctrine. Civil courts "may apply neutral principles of law to decide church disputes that 'involve [] no consideration of doctrinal matters.'" *Myhre v. Seventh-Day Adventist Church Reform Movement*, 719 Fed. App'x 926, 928 (11th Cir. 2018). For example, the abstention doctrine would apply to a question of whether a pastor remained "in good standing" in the church.

*Id.* at 929. It does not, however, bar a claim for breach of contract and intentional infliction of emotional distress against the church. *St. Brendan High School, Inc. v. Neff*, 283 So. 3d 399, 402 (Fla. Dist. Ct. App. 2019). The doctrine is limited to matters that concern "discipline, faith, internal organization, or ecclesiastical rule, custom or law." *Malicki v. Doe*, 814 So. 2d 347, 355–57 (Fla. 2002) (internal quotations omitted).

Despite Florida's careful circumscription of the ecclesiastical abstention doctrine to matters such as church discipline and internal church organization, the Defendant argues that Reuven's concocted story about a physical attack in a coffee shop is a "theological controversy." (Defendant's Memo. at 8). In support of his argument, Defendant cites *Diocese of Palm Beach, Inc. v. Gallagher*, 249 So. 3d 657 (Fla. Dist. Ct. App. 2018). In *Gallagher*, the court held that the ecclesiastical abstention doctrine precluded jurisdiction over a defamation suit because the suit would "necessarily entangle us in questions about the religious reasons why Father Gallagher was not promoted under canonical law." *Gallagher*, 249 So. 3d at 663. The Defendant's description of the decision in *Gallagher*, however, omits essential information: that the church had stated publicly that Gallagher was "unfit to be a priest." *Id.* at 660, 664. Quite clearly, it is exclusively a matter for church authorities to decide who is and who is not fit for ordination or continuance in the ministry; for a civil court to adjudicate that issue would immediately involve the court in adjudicating matters of internal church discipline and the plaintiff's adherence to the faith. The Diocese argued that Gallagher's defamation complaint was "equivalent to a wrongful discharge or 1employment retaliation case" whose resolution would require the court to consider questions of internal church governance." *Id.* at 661. The court agreed, yet it cautioned that its decision should not be extended per se. "'Simply because a church is involved as a

litigant does not make the matter a religious one; instead, inquiry must be made [1] as to the nature of the dispute and [2] whether it can be decided on neutral principles of secular law without a court intruding upon, interfering with, or deciding church doctrine.'" *Id.* at 662 (citing *Flynn v. Estevez*, 221 So. 3d 1241, 1247 (Fla. Dist. Ct. App. 2017)).

Unlike *Gallagher*, this suit does not involve the equivalent to a wrongful discharge case. This case does not, as Defendant avers, require this Court to "becom[e] entangled in hefty, sensitive, First Amendment Protected issues of theology." (Defendant's Memo. at 9). The fact that the meeting in the coffee shop involved a religious discussion does not make an assault into a theological matter. The "nature of the dispute" in this case is whether Eitan and Moti assaulted Rabbi Asor. This issue can be resolved by application of neutral principles of law. No entanglement in "hefty, sensitive" theological matters will be necessary nor even relevant. The Court will not "have to peer into the inner workings of both parties' theological systems," as the Defendant asserts. (*Id.* at 9–10). The Defendant accused Eitan and Moti of assaulting a rabbi. They either did or did not.[3]

## B.  Defendant's False Statement Is Not Protected By Privilege

In his next attempt to create a religious exception to the tort of defamation, the Defendant argues that his statements were "privileged as rabbinical teachings." (Defendant's Memo. at 5). Claiming a qualified privilege, defendant asserts that he had "a moral and social duty to warn other Jews of the poor behavior of those who prey upon them …." (*Id.*) This assertion stretches the meaning of "religious teachings" beyond all reason.

---

[3] *See also Bilbrey v. Myers*, 91 So. 3d 887, 892 (Fla. Dist. Ct. App. 2012) (holding that defamation claim arising from pastor's accusation that person was homosexual was improperly dismissed under the ecclesiastical abstention doctrine because the doctrine did not grant the pastor "carte blanche" to defame church members and ex-members); *Malicki*, 804 So.2d 347, 351 (Fla. 2022) (holding that the ecclesiastical abstention doctrine does not provide a shield behind which a church may avoid liability for harm caused to an adult and a child parishioner arising from the alleged sexual assault or battery by one of its clergy).

Just because a statement was uttered by a clergy does not render it privileged. Instead, the doctrine of qualified privilege has important limitations.

First, the Court should not, at this stage, rule on a claim of qualified privilege. A court should resolve a claim of qualified privilege "only if the circumstances surrounding the communication are undisputed or so clear under the evidence as to be unquestionable." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1264 (S.D. Fla. 2004) (citing *Nodar v. Galbreath,* 462 So. 2d 803, 810 (Fla. 1984)). In most cases, the question of qualified privilege "is a mixed question of law and fact, and it is a 'rare occasion' that the issue should be addressed as a matter of law." *Id.* (citing *Shafran v. Parrish*, 787 So. 2d 177, 180 (Fla. Dist. Ct. App. 2001)). In his Memorandum in Support of his Motion to Dismiss, the Defendant himself claims evidence and assertions, specifically a conversation with an unnamed rabbi, that are not part of the Amended Complaint, thus impliedly converting his self-styled motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). At a minimum, this introduction by the Defendant of additional yet undocumented evidence renders the entire question of qualified privilege not amenable to immediate resolution by this Court. "The circumstances surrounding the communication" are not "undisputed" or "unquestionable." *See Falic*, 347 F. Supp. 2d at 1264. Defendant himself has disputed or questioned those circumstances. On this ground alone, the Motion on the basis of qualified privilege should be denied.

Second, a claim of qualified privilege must, in the case at bar, be based on "mutuality of interest" between the speaker and the listener. *Id*. In other words, for a qualified privilege to attach, both the speaker and the listener must have "a corresponding interest or duty." *Id.* (quoting *Nodar*, 462 So. 2d at 809); *Thomas v. Tampa Bay Downs,*

*Inc.*, 761 So. 2d 401, 404 (Fla. Dist. Ct. App. 2000). Even if the speaker Defendant had, as he claims, a moral or cultural interest to warn Jews, it cannot be said that the "listeners" had a "corresponding interest or duty." These videos and statements were posted on the world wide web and have been visited and viewed thousands of times. (FAC ¶ 58 (noting video has been viewed over 7,500 times)). The Defendant offers no proof, nor could he, that these thousands of unknown, unnamed visitors had any particular "corresponding duty" to the one he claims, or indeed had any particular motivation or interest at all. They could have been watching cute cat videos when they came across a link to Defendant's accusations. This Court knows nothing about the interests or duties of these listeners. On that ground alone, the Defendant's claim of qualified privilege fails.

Third, as the Defendant acknowledges, his claim of qualified privilege requires that he have acted in good faith. *E.g.*, *Thomas*, 761 So. 2d at 404. A statement is made in good faith if it is made "with a good motive, and not for the purpose of harming the subject of the defamation." *Lewis v. Evans*, 406 So. 2d 489, 492 (Fla. Dist. Ct. App. 1981). The facts alleged in the First Amended Complaint, all supported by admissible evidence, provide ample grounds to conclude the opposite: that Reuven's video and statements were not made with a good motive. (FAC ¶¶ 67–75). They were malicious fabrications. (*Id.*). By their own terms, they were made "for the purpose of harming the subjects," as the verbal accusations were accompanied by images of the plaintiffs and their organization. The First Amended Complaint supplies ample allegations of bad faith, the Defendant's unsupported assertions notwithstanding. (*Id.*). The defense of qualified privilege has not been established.

### C.      The Amended Complaint Adequately Alleges Intent, Including Actual Malice

At various junctures throughout his Memorandum in Support of his Motion, the Defendant makes two arguments about his intent: first, that he acted in "good faith," relying on the supposed conversation with the unnamed rabbi; second, that the Plaintiffs failed to allege "bad faith" or "actual malice" sufficiently.

### 1.      Defendant Did Not Act in Good Faith

The Defendant's unsupported assertions about his good faith should be, at a minimum, excluded from this Court's consideration; at most, they are grounds to dismiss this motion as an unsupported motion for summary judgment. Fed. R. Civ. P. 12(d). This point is argued above. *See* Legal Standard, *supra*.

Even if taken at face value, however, this "evidence" about Defendant's mystery rabbi does not suffice to establish good faith. Assuming Reuven in reality heard this story from his rabbi, his repeating a highly damaging and incriminating third-hand story is hardly convincing evidence of good faith. Refusing to revise or retract such a story after repeated requests and detailed correction is not evidence of good faith.[4] (FAC ¶¶ 76–79). Publicizing blatant untruths, even when told that the supposed source of the mystery rabbi's tale, Rabbi Asor, had himself disavowed the fiction, is not evidence of good faith. (FAC ¶¶ 69–71, FAC Ex. C ("EITAN BAR: "But did you claim that we beat you and tried to break your bones?!?!?!? RABBI ASOR: "Not true!")).

Reuven argues that, by repeating the story he supposedly heard from his mystery rabbi, he was participating in the Jewish "oral tradition" of repeating stories of old. This tradition might apply to tales of Abraham and King David, or to the "Oral Torah" providing

---

[4] Defendant admits that he received Plaintiffs' two demands for retraction. (Defendant's Memo. at 2).

guidance from and interpretation of the Written Torah. However, Defendant presents no evidence that it applies to spurious claims of altercations at the local coffee shop.

### 2.      Actual Malice Is Alleged

As to the Defendant's second contention, that the First Amended Complaint fails to plead intent adequately, no fair reading of the First Amended Complaint's many paragraphs can plausibly support this conclusion. Whether the applicable standard is eventually deemed to be constitutional malice, common law malice, or mere negligence, the First Amended Complaint alleges adequate and ample facts in support. (FAC ¶¶ 3, 67–75). Under constitutional law, the Plaintiffs will likely be required to prove "actual malice" if they are deemed public or limited public figures. *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 155 (1967); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 361 (1974); *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 165–66 (1979). "Actual malice" requires that the Defendant either knew the truth or recklessly disregarded the truth yet chose to publish a falsehood. *E.g.*, *Sullivan*, 376 U.S. at 279–80. "Actual malice" and other states of mind relevant to defamation claims can be proven through circumstantial evidence. *4-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) ("plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence"); *Perk v. Reader's Digest Association*, 931 F.2d 408, 411 (6th Cir. 1991) ("proof of malice in the form of cumulative circumstantial evidence . . . is often the only way to prove malice in libel cases").

In this matter, pleading facts that support "actual malice" is straightforward: the First Amended Complaint alleges that the Defendant knew the truth yet invented a falsehood. (FAC ¶¶ 71, 74). Ample factual evidence of Defendant's actual knowledge is

alleged. (*Id.*). Rabbi Asor denied stating that Eitan and Moti had physically attacked him, thus negating the Defendant's assertions that his unnamed rabbi had repeated this claim. (*Id.* ¶ 68–71). Defendant's knowledge of the truth accompanied by his decision to publish a falsehood, if proven, fits the requirements of "actual malice" on all fours.

### 3.  Common Law Malice Is Alleged

Should the Plaintiffs be required to prove "malice" in the common law sense (to justify a punitive award, for example), again the First Amended Complaint adequately pleads Defendant's malicious intent. It alleges Defendant was motivated by personal spite, organizational rivalry, and religious disagreement (*id.* ¶¶ 3, 10, 18), and that he knew the truth, invented a falsehood, refused reasonable efforts at retraction, and evaded service of process (*id.* ¶¶ 34–35, 67–75, FAC Ex. A). His fanciful invented story claims that Eitan and Moti "beat up" Rabbi Asor and attempted to "break his bones." (*Id.* ¶ 59). The patent outrageousness of the statement itself is suggestive of the Defendant's malicious intent. The fact that his video directs his venom with great particularity at Eitan and Moti is additional evidence of malicious intent.

The fact that Defendant's statements constitute "defamation per se" under Florida law provides even more evidence of malice. *Blake v. Ann-Marie Giustibelli, P.A.*, 182 So. 3d 881, 884 (Fla. Dist. Ct. App. 2016) ("[A] publication is libelous per se, or actionable per se, if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession.") (internal citations omitted); *Kirvin v. Clark*, 396 So. 2d 1203, 1203–04 (Fla. Dist. Ct. App. 1981) (holding defendant's statement that

13

plaintiff threatened to visit bodily harm on the speaker was defamatory per se because it imputed that plaintiff had committed a crime). With defamation per se, malice may be presumed. *Lundquist v. Alewine*, 397 So. 2d 1148, 1149 (Fla. Dist. Ct. App. 1981).

The Defendant argues that personal animosity alone is "inadequate" to prove common law malice, citing *Pomfret v. Atkinson*, 137 So. 3d 1161 (Fla. Dist. Ct. App. 2014). This contention is correct; more than mere animosity is needed. The opinion in *Pomfret* is instructive. The statements in *Pomfret*, consisting of out-of-court questions from an attorney to a non-party witness, were protected by a qualified privilege. To overcome this privilege, the plaintiff had to establish common law malice: "that the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff." *Pomfret*, 137 So. 3d at 1164 (citing *Delmonico v. Traynor*, 116 So. 3d 1205, 1220 (Fla. 2013)). In finding that the attorney's questions were protected by a qualified privilege, the *Pomfret* court stated the attorney's alleged "personal feelings of indignation" were insufficient to defeat the privilege "where the primary motivation is within the scope of the privilege." *Id.* Thus, the requirement that the plaintiff establish actual malice "by a preponderance of the evidence" was not met: "Pomfret did not show that Atkinson was motivated *primarily* by a desire to harm Pomfret's reputation …." *Id.* (italics in original). *Pomfret* does not stand for the proposition that defendant's personal feelings or ill will is not relevant to establishing malice; it simply requires more, as the plaintiff must plead and prove malice preponderantly. In this matter, the fact that the Defendant made inadequate inquiries before making his defamatory statements provides conclusive evidence of malice. Under Florida law, making a defamatory statement without any attempt to confirm one's

14

suspicions is sufficient, by itself, to establish malice. *Asinmaz v. Semrau*, 42 So. 3d 955, 958 (Fla. Dist. Ct. App. 2010).

### 4.      Negligence Is Alleged

Finally, if the Plaintiffs are determined by this Court to constitute private figures, then the standard of fault will be mere negligence. *Della-Donna v. Gore Newspapers Co.,* 489 So. 2d 72, 75 (Fla. Dist. Ct. App. 1986) (citing *Miami Herald Publishing Co. v. Ane*, 458 So. 2d 239 (Fla. 1984)). The Defendant's decision to rely on private communications from an unnamed rabbi as the basis for making explosive and highly damaging public charges against the Plaintiffs is compelling evidence of negligence, particularly when the Plaintiffs' repeated requests at correction were ignored. (FAC ¶¶ 67–75). Not only did the Defendant not properly or more than minimally investigate the matter before making his public accusation, but he also consciously lied about the entire episode. (*Id.*).

## CONCLUSION

Therefore, Plaintiffs, by and through undersigned counsel, respectfully request that this Court enter an order **DENYING** Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted and pursuant to Florida's "Anti-SLAPP" statute, Fla. Stat. § 768.295.

Respectfully submitted,

**/s/ Richard P. Green**_____
Richard P. Green (0119530)
LEWIS, LONGMAN & WALKER, P.A.
100 Second Avenue South
Suite 501-S
St. Petersburg, Florida 33701
Phone: (727) 245-0820
Fax: (727) 290-4057
rgreen@llw-law.com

Todd V. McMurtry (admitted *pro hac vice*)
J. Will Huber (admitted *pro hac vice*)
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive
Suite 500
Fort Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
whuber@hemmerlaw.com

*Trial Attorneys for Plaintiffs,*
*One For Israel, Eitan Bar, and*
*Mordechai Vaknin*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been electronically

filed with the Court's CM/ECF system in compliance with Rule 5.2(a), Local Rules of the

United States District Court for the Southern District of Florida, and was served on counsel

for the Defendant via the designated email address below:

SeanCaro Lopez, Esq.
sean@thelopezlawgroup.com

**/s/ Richard P. Green**_____
Richard P. Green (0119530)