UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-61475-CIV-SINGHAL

ONE FOR ISRAEL, a Texas nonprofit corporation, and EITAN BAR, in his individual capacity, and MORDECHAI VAKNIN, in his individual capacity,

   Plaintiffs,

v.

YARON REUVEN, in his individual capacity,

   Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (DE [14]). One for Israel is a ministry initiative whose mission is to evangelize Israelis and promote Messianic Judaism. (DE [14] ¶ 6,8). Eitan Bar ("Eitan" or "Bar") and Mordechai Vaknin ("Vaknin") are missionaries working for the ministry who teach the New Testament and share Gospel of Jesus Christ with youth, soldiers, and students. (DE [14] ¶ 11,12). One for Israel, Bar, and Vaknin are the Plaintiffs in this action. The defendant is Yaron Reuven ("Reuven"), an Orthodox Jewish Rabbi who maintains a website, a mobile application, and a YouTube channel to promote Orthodox Judaism. (DE[14] ¶ 17, 19, 20, 21). Plaintiffs allege defamation caused by a video that Reuven created and published on various social media platforms. The matter comes to the Court under diversity jurisdiction because all parties have diversity of citizenship and Plaintiffs allege an amount in controversy exceeding $75,000 as required by 28 U.S.C. §1332. (DE [14] ¶ 29). For the reasons discussed below, the motion to dismiss is denied.

**I. BACKGROUND**

On January 21, 2022, Plaintiffs filed their First Amended Complaint (DE [14]) alleging defamation. On February 8, 2021, Reuven published a video titled, "What Happened when Missionaries ONE FOR ISRAEL Met Rabbi Daniel Asor" in which he made the statements at issue in this case. (DE [14] ¶ 55). Reuven published the video on his YouTube channel, Facebook, and other social media platforms. (DE [14] ¶ 55). About 2 minutes and 37 seconds into the video, Reuven tells viewers about a meeting that took place in 2014 at a coffeeshop in Israel. (DE [14] ¶ 59). As related on the video, Rabbi Asor met with Eitan and Vaknin to debate religious issues before an individual who was considering converting to Messianic Judaism. At the meeting, Rabbi Asor "destroy[ed]" both Eitan and Vaknin by proving them wrong. (DE [14] ¶ 59). Reuven reports that Eitan and Vaknin got angry and tried to beat up Rabbi Asor. He says Eitan and Vaknin "tried to break his bones!" (DE [14] ¶ 59). Plaintiffs contend the story Reuven told is false and an invention to negatively portray them and the organization for which they work. (DE [14] ¶ 60). The video has over 7,500 views on YouTube. (DE [14] ¶ 58). Plaintiffs allege they have suffered significant reputational and psychological damage because of the release of the video and brought this action seeking compensation from Reuven. (DE [14] ¶ 92).

Reuven moves to dismiss the First Amended Complaint on two grounds. (DE [26]). First, Reuven argues that missionaries are public figures so there is a qualified privilege that requires Plaintiffs prove Reuven's actions were motivated by actual malice. Reuven argues Plaintiffs failed to allege facts that would support a finding of actual malice, (DE [26]). Second, Reuven argues lack of jurisdiction because courts may not rule on matters of religious conflict. (DE [26]).

**II. LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations" it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). A district judge may also look beyond the four corners of the complaint to conclude personal jurisdiction exists when the defendant provides affidavits or other evidence in support of the motion. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 6907056 at *2 (S.D. Fla. Nov. 24, 2020). The court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). But pleadings that "are no more than conclusions are not entitled to the assumption of truth. Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

3

**III. DISCUSSION**

Plaintiffs allege Reuven's video defamed them. Under Florida law, defamation requires the following five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement is defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008). In defamation per se cases, Plaintiffs "do not need to show any special damages" because the defamation is actionable on its face. *Johnson v. Fin. Acceptance Co. of Georgia*, 118 Fla. 397, 400 (1935). Defamation per se occurs when: "(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014), *aff'd* (11th Cir. 14-13855 Feb. 17, 2015) (quoting *Richard v. Gray,* 62 So.2d 597, 598 (Fla.1953)).

When the defamed persons are public figures, a claimant must provide evidence that the defendant acted with actual malice. *Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Actual malice must be proven by clear and convincing evidence. *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1156 (S.D. Fla. 2018), *aff'd*, 973 F.3d 1304 (11th Cir. 2020). A defendant acts with actual malice when information is published "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.*

Qualification as a public figure is a matter of law determined by the court. *Id.* To make the determination, the court must first designate the controversy as a public

controversy and second, it must conclude the plaintiff plays a prominent role in the public controversy. *Friedgood v. Peters Pub. Co.*, 521 So. 2d 236, 240 (Fla. 4th DCA 1988). There are two types of public figures: (1) general public figures, who are famous; and (2) limited public figures, who have thrust themselves into a particular controversy. *Turner*, 879 F.3d at 1272. If a plaintiff is a general public figure, actual malice must always be proven. *Id.* If the plaintiff is a limited public figure, actual malice only needs to be proven if the court finds the plaintiff played a central role in the controversy and that the alleged defamation was pertinent to the plaintiff's role in the given controversy. *Id.* at 1273.

Reuven argues that missionaries are limited public figures and must prove actual malice. Plaintiffs do not contest their status as limited public figures, but argue their Complaint meets the actual malice standard, as well as the common law defamation standard. The Court, however, finds that Plaintiffs are not limited public figures and, therefore, the actual malice standard does not apply.

A public figure is a person who has "greater access to the media" and voluntarily places himself in the public eye. *Silvester v. Am. Broad. Companies, Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988). "In short, public figures invite attention and comment." *Id.* (quotation omitted). Plaintiffs arguably meet this standard because their ministry is "on the forefront of high-tech evangelism and uses innovative methods and technologies to spread Messianic Judaism throughout the world." (DE [14] ¶ 9). Further, Eitan wrote several books on the topic, gave speeches and presentations, and serves as the Director of Media Outreach for the Ministry. (DE [14] ¶ 13, 14, 15).

There are two types of public figures: those who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes...

5

and those who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Silvester,* 839 F.2d at 1494 (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345 (1974)). The latter are limited public figures. Rueven does not argue that Plaintiffs are general public figures, therefore, the Court must determine whether they are limited public figures.

The Eleventh Circuit has adopted a three-part test for identifying a limited public figure: first, "the court must isolate the public controversy"; second, it must "examine the plaintiffs' involvement in the controversy"; and third, it must "determine whether the alleged defamation [was] germane to plaintiffs' participation in the controversy." *Id.* (citing *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980)).

Beginning with the first analysis, the public controversy must be more than merely newsworthy; the public must legitimately be concerned about it. *Id.* Rueven argues that the public controversy here is the "theological conflict between Judaism and Christian missionaries." (DE [26] p.4). While this "conflict" may be of deep and abiding interest to many, it is certainly not something discussed in the news or that the public is highly concerned with. Examples of public controversies in previous cases have included the Watergate scandal (*Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917 (M.D. Fla. 1996); what should be taught about homosexuality and whether the rights of homosexuals should be restricted (*Faltas v. State Newspaper*, 928 F. Sup. 637 (D.S.C. 1996); and the 2004 election (*Diaz v. Bd. of Educ. Of the Twp. of S. Brunswick*, 2006 WL 3490339, at *1 (D.N.J. Dec.1, 2006). Theological debates do not generate comparable public controversy.

6

Regarding the second prong, Plaintiffs do play a public role in the controversy between the two faiths. Both Vaknin and Bar are missionaries on behalf of One for Israel, who work with diverse populations to teach and help them become Messianic Jews. (DE [14] ¶ 11, 12) But to satisfy this prong, "Plaintiffs must be more than 'tangential participants' in the controversy; they must have achieved 'special prominence' in it." *Gubarev v. BuzzFeed, Inc.*, 354 F. Supp 3d 1317, 1328 (2018). "[T]o fulfill this prong, Plaintiffs either (1) must purposely try to influence the outcome of the public controversy or (2) could realistically have been expected, because of [their] position in the controversy, to have an impact on its resolution." *Id.* (quotations omitted). Because there is no public controversy, Plaintiffs cannot have achieved a "special prominence." Thus, the second prong is also unfulfilled.

Finally, the third prong of the *Silvester* test fails because the defamatory statements made by Reuven have no relevance to the religious conflict. "[T]he law does not allow the relevant public controversy to be divorced from the allegedly defamatory statements and the context in which they were made." *Gubarev,* 354 F. Supp 3d at 1327. In this case, Reuven said the Plaintiffs violently attacked Rabbi Asor at a debate. The accusation of violence is not related to the alleged controversy of the theological debate. Reuven's statements did not pertain to religion or the views of Judaism and Christianity; instead, they were about the character and conduct of two individuals. The third prong, therefore, is also unfulfilled. Thus, the Court concludes that Plaintiffs are not limited public figures and not required to prove that Reuven acted with actual malice.

The Court finds that Plaintiffs have pled sufficient facts to plausibly allege common law defamation as defined by *Jews For Jesus, Inc.,* 997 So.2d at 1106. First, publication.

In the First Amended Complaint, Plaintiffs provide a link to the video in which the defamatory statements were made, and the video is still accessible to viewers. (DE [14] ¶ 57). The video was published on YouTube, Facebook, a Website, and App ran by Reuven, and other social media platforms. (DE [14] ¶ 55). Plaintiffs argue this information is outside the complaint and therefore should not be allowed. (DE [29] p.3). But the entire video at issue is linked in the pleading and the information at issue is part of what Reuven shared in the video. As a result, the information is in the pleadings. See *Garin v. Menegazzo*, WL 1658831, at *6 (S.D. Fla. May 25, 2022) (holding that when a video is referenced in a complaint and subsequent motions reference the video, information gathered from the video is part of the complaint and will not be struck).

Second, Plaintiffs allege facts that would plausibly establish falsity. Not only do both Eitan and Mordechai claim that the story Reuven told was false, but also Rabbi Asor who was the person allegedly attacked at the café stated that the story was false. (DE [14] ¶ 60, 70).

Third, Plaintiffs have plausibly alleged that Reuven was negligent in publishing defamatory content without first verifying the information. Reuven said he heard the story from a "third party who was intimately familiar with Rabbi Asor." (DE [26] p. 6). (In the complaint Plaintiffs allege the source of Reuven's version was Rabbi Asor himself ¶ 68). Only after this lawsuit was initiated and the video viewed over 7,500 times, did Reuven contact Rabbi Asor to verify the story. (DE [14] ¶ 58); (DE [26] p. 2-3). This shows that it was possible for Reuven to obtain more accurate information before publishing the video, but he chose not to do so.

Fourth, Plaintiffs allege actual damages in the form of reputational harm, an increase in threats of potential violence, and severe emotional distress and personal physical injury. (DE [14] ¶ 90-92). Lastly, the Plaintiffs show that the statement is defamatory. The video published One for Israel's logo, identified Eitan and Vaknin by name and included images of their faces in parts of the video. (DE [14] ¶ 82-83). Moreover, Plaintiffs allege that the video's accusations of violence subjected them to hatred, ridicule, diminished their standing in the community, and denigrated their fitness to be evangelists. (DE [14] ¶ 85). This is sufficient to allege actual damages.

Additionally, Plaintiffs allege enough to proceed on a claim of defamation per se. This standard would allow plaintiffs to recover for defamation without proof of actual damages because the statements are damaging on their own. *Johnson*, 118 Fla. at 400. The possibility is available because the statements charged the Plaintiffs with an infamous crime and injured the Plaintiffs' profession as missionaries. *Klayman*, 22 F. Supp. 3d at 1247 (quoting *Richard v. Gray,* 62 So.2d 597, 598 (Fla.1953)). Reuven stated that Eitan and Vaknin "attacked" Rabbi Asor in his video. (DE [14] ¶ 59). The video told viewers that Eitan and Vaknin committed assault and battery to a religious leader who did not agree with their beliefs. (DE [14] ¶ 65). One can draw a reasonable inference that such a statement would likely have a significant impact on the profession of a missionary. (DE [14] ¶ 66). In sum, Plaintiffs' First Amended Complaint plausibly states a claim for defamation.

Reuven next argues that this Court lacks subject matter jurisdiction to resolve the case because of the ecclesiastical abstention doctrine. (DE [26]). The Court does not agree. The ecclesiastical abstention doctrine holds that courts must abstain from deciding issues connected to "theological controversy, church discipline, ecclesiastical government, or conformity of members to the church." *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 Fed. Appx. 926, 928 (11th Cir. 2018). The doctrine was created because court involvement in religious disputes may implicate the First Amendment. *Id.*

Reuven argues that to resolve the controversy at hand, the court must get entangled in religious questions because the judgment will involve a determination of the rights and roles of a rabbi. (DE [26]). The Court does not agree. Under the laws of the United States and Florida, individuals have a right to recourse when wronged by defamation. It is known that "[n]o man in this country is so high that he is above the law." *U.S. v. Lee*, 106 U.S. 196, 220 (1882). As such, even religious leaders must abide by the laws of the United States. Reuven's role as a rabbi does not shield him from being sued for defamation. The statements said in the video have nothing to do with religion; they were about a violent attack that did not happen. These issues have nothing to do with religious doctrine or conflict. By contrast, under the ecclesiastical abstention doctrine, a court will not rule on a case that requires it to define the "very core or what the religious body as a whole believes." *Myhre*, 719 Fed. Appx. at 929 (holding there is no jurisdiction

when a court must apply church rules and standards to members of its clergy). The ecclesiastical abstention doctrine is inapplicable to this case. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (DE [13]) is **DENIED**. Defendant shall file an answer by **October 7, 2022.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 23rd day of September 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF